# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:13-cr-00137-SI |
| Respondent, | **OPINION AND ORDER** |
| v. | |
| **FREDERIC RUSSELL DEAN**, | |
| Petitioner-Defendant. | |

Billy J. Williams, United States Attorney, and Kelly A. Zusman, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Respondent United States of America.

Tiffany A. Harris, ATTORNEY AT LAW, 811 S.W. Naito Parkway, Suite 500, Portland, OR 97204. Of Attorneys for Petitioner-Defendant.

**Michael H. Simon, District Judge.**

On November 18, 2015, Defendant Frederic Russell Dean ("Dean") moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Dean argues that the Supreme Court's recent decision in *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015), now establishes that the specific provision in the U.S. Sentencing Guidelines (the "Guidelines") that significantly increased his base offense level is unconstitutionally vague and was adopted by the sentencing court in error. The Government agrees. The Government, however, opposes the motion. The

Government argues that Dean's claim is barred by procedural default and that *Johnson* does not apply retroactively in his case. For the reasons set forth below, the Court grants the motion and will resentence Dean.

## STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a). To warrant relief, a petitioner must demonstrate that an error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

A petitioner seeking relief under § 2255 must file his or her motion within the one-year statute of limitations set forth in § 2255(f). The limitations period runs one year from the latest of four dates: (1) when the judgment of conviction becomes final; (2) when the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) when the right asserted is initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original) (quotation marks omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

If a court denies a habeas petition, the court may issue a certificate of appealability if "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see* 28 U.S.C. § 2253(c)(1). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotation marks omitted).

## BACKGROUND

### A.  Dean's Guilty Plea and Sentencing

On March 25, 2013, the Information was filed in this case charging Dean with one count of being a felon in possession of firearms, a violation of 18 U.S.C. § 922(g)(1). At the time of his

offense, Dean was on supervised release in *United States v. Fredric Russell Dean*, Case

No. 3:08-cr-00252-HA. In December 2012, a supervised release violation warrant was issued in

that case for failure to participate in substance abuse treatment, among other violations. On

March 4, 2013, U.S. Marshals found Dean at a residence and arrested him. A search warrant for

the residence yielded two firearms that are the subject of the present charge. Both of the firearms

had been reported stolen.

On February 10, 2014, Dean pleaded guilty to the single-count Information. In the plea

agreement, Dean agreed to the following waiver of many of his rights to appeal and to file for

post-conviction relief:

> **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly
> and voluntarily waives the right to appeal from any aspect of the
> conviction and sentence on any grounds, except for a claim that:
> (1) the sentence imposed exceeds the statutory maximum, or
> (2) the Court arrives at an advisory sentencing guideline range by
> applying an upward departure under the provisions of Guidelines
> Chapters 4 or 5K, or (3) the Court exercises its discretion under
> 18 U.S.C. § 3553(a) to impose a sentence which exceeds the
> advisory guidelines sentencing range. Should defendant seek an
> appeal, despite this waiver, the USAO may take any position on
> any issue on appeal. Defendant also waives the right to file any
> collateral attack, including a motion under 28 U.S.C. § 2255,
> challenging any aspect of the conviction or sentence on any
> grounds, except on grounds on ineffective assistance of counsel,
> and except as provided in Fed. R. Crim. P. 33[1] and 18 U.S.C.
> § 3582(c)(2)[2].

---

[1] Federal Rule of Criminal Procedure 33 provides:

    (a) Defendant's Motion. Upon the defendant's motion, the court
may vacate any judgment and grant a new trial if the interest of
justice so requires. If the case was tried without a jury, the
court may take additional testimony and enter a new judgment.

    (b) Time to File

    (1) Newly Discovered Evidence. Any motion for a new trial
grounded on newly discovered evidence must be filed within 3

Dean and the Government jointly agreed to recommend a sentence of 60 months, to be followed by three years of supervised release. The Government further agreed to recommend a sentence at the low end of the advisory guideline revocation table for the supervised release violations in Case No. 3:08-cr-00252-HA, and to recommend that the sentence in that matter be served concurrently with the 60-month sentence in Dean's new case.

The U.S. Probation Office agreed with the parties' recommendation of 60 months imprisonment followed by a three-year term of supervised release. The U.S. Probation Office, however, noted that the new offense was Dean's third federal conviction and that he had a history of noncompliance on supervision. As a result, the U.S. Probation Office recommended that the sentence for the new offense be served consecutively to the sentence Dean receives for violating his supervised release in Case No. 3:08-cr-00252-HA. Under the Guidelines, "Any term of imprisonment imposed upon the revocation of probation or supervised release shall be

---

years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

[2] 18 U.S.C. § 3582(c)(2) provides:

Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

ordered to be served consecutively to any sentence of imprisonment that the defendant is

serving." U.S.S.G. § 7B1.3(f). Under 18 U.S.C. § 3584, however, a sentencing court has the

discretion impose a consecutive, concurrent, or partially concurrent sentence.

The U.S. Probation Office made the following calculations under the Guidelines:

| | |
|---|---|
| Base Offense Level: | 20 |
| § 2K2.1(a)(4)(A)—922(g), prior felony crime of violence | |
| Specific Offense Characteristics: | +2 |
| § 2K2.1(b)(4)(A)—stolen firearms | |
| Acceptance of Responsibility: | -3 |
| § 3E1.1 | |
| Total Offense Level: | 19 |

With Dean's criminal history score of 13 points, he is in Criminal History category VI,

producing an advisory sentencing range of 63 to 78 months.

In calculating Dean's base offense level, the U.S. Probation Office relied upon U.S.S.G.

§ 2K2.1(a)(4)(A), governing firearms offenses, which sets the base offense level at 20 if "the

defendant committed any part of the instant offense subsequent to sustaining one felony

conviction of either a crime of violence or a controlled substance offense." A "crime of violence"

is defined for purposes of § 2K2.1(a)(4)(A) by the Career Offenders Guideline, § 4B1.2(a)(2), as

"any offense under federal or state law, punishable by imprisonment for a term exceeding one

year, that . . . involves conduct that presents a serious potential risk of physical injury to

another." The Armed Career Criminal Act (the "ACCA") defines the term "violent felony" in

exactly the same manner that the Guidelines define "crime of violence."[3] See 18 U.S.C.

§ 924(e)(2)(B)(ii) ("the term 'violent felony' means any crime punishable by imprisonment for a

---

[3] The Ninth Circuit "make[s] 'no distinction between the terms 'violent felony' [as defined in the ACCA] and 'crime of violence' [as defined in § 4B1.2(a)(2) of the Sentencing Guidelines] for purposes of interpreting the residual clause[s].'" *United States v. Spencer*, 724 F.3d 1133, 1138 (9th Cir. 2013) (first alteration added) (quoting *United States v. Crews*, 621 F.3d 849, 852 n.4 (9th Cir. 2010)).

term exceeding one year . . . [that] involves conduct that presents a serious potential risk of physical injury to another").

Dean had a prior state court conviction from 2005 for attempting to elude police while driving a vehicle. In *Sykes v. United States*, 564 U.S. 1, 131 S. Ct. 2267 (2011), the Supreme Court held that when the driver of a vehicle knowingly or intentionally flees from law enforcement, the individual commits a "violent felony" as defined by the ACCA. *Id.* at 2270. Thus, the U.S. Probation Office, citing *Sykes*, concluded that Dean's prior conviction for eluding police constituted a "crime of violence" for purposes of the § 2K2.1(a)(4)(A) enhancement.

Dean did not object to the U.S. Probation Office's calculations under the Guidelines. In his plea agreement, Dean and the Government agreed that his base offense level was 20 under § 2K2.1(a)(4)(A). The Government also agreed to recommend a two-level downward variance based on Dean's agreement to waive indictment and forego motions practice.

U.S. District Judge Ancer L. Haggerty[4] adopted the U.S. Probation Office's sentencing report without change. Judge Haggerty elected to grant the two-level downward variance that the parties jointly recommended in their plea agreement, resulting in a total offense level of 17. With this downward variance, the advisory sentencing range was 51 to 63 months. On November 13, 2014, Judge Haggerty sentenced Dean to 60 months imprisonment, to be served concurrently with a 24-month sentence imposed in Case No. 3:08-cr-00252-HA for the supervised release violations. Neither party appealed.

**B.  Developments After Dean's Sentencing**

On June 26, 2015, the Supreme Court issued its opinion *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015). In *Johnson*, the petitioner pleaded guilty to being a felon in

---

[4] Judge Haggerty retired from federal judicial service on December 31, 2014.

possession of a firearm in violation of 18 U.S.C. § 922(g). *Id.* at 2556. The government requested

an enhanced sentence under § 924(e)(1) of the ACCA, which provides that a defendant with

three prior convictions for "violent felonies" faces a mandatory minimum sentence of 15 years.

*Id.* The government argued that three of Johnson's previous offenses, one of which was for

unlawful possession of a short-barreled shotgun, qualified as "violent felonies." *Id.* The district

court agreed, and the Eighth Circuit affirmed. *Id.* Upon review, the Supreme Court considered

whether the ACCA's definition of a "violent felony" as any felony that "'involves conduct that

presents a serious potential risk of physical injury to another'" is unconstitutionally vague. *Id.*

at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). This definition is commonly known as the

ACCA's "residual clause." *Id.* at 2556.

The Supreme Court explained that its previous opinions interpreting the ACCA's residual

clause, including *Sykes*, "failed to establish any generally applicable test" and that "[d]ecisions

under the residual clause have proved to be anything but evenhanded, predictable, or consistent."

*Id.* at 2559, 2563. The Court held that the ACCA's residual clause violated the Constitution's

guarantee of due process and overruled *Sykes* and other decisions interpreting the clause. *Id.*

at 2563. Thus, after *Johnson*, the sentences of criminal defendants can no longer be increased

using the ACCA's residual clause. In its opinion, the Court did not explicitly discuss whether

*Johnson* applied retroactively on collateral review to individuals sentenced under the ACCA's

residual clause. The Court also did not discuss the identically worded residual clause in the

Career Offenders Guideline, § 4B1.2(a)(2).

If the "crime of violence" enhancement in § 2K2.1(a)(4)(A) had not been applied in

Dean's case based upon § 4B1.2(a)(2), *Sykes*, and Dean's prior state court conviction for fleeing

the police, his base offense level would have been 14. The resulting advisory sentencing range

would have been 33 to 41 months without the benefit of the two-level downward variance that the parties recommended. Dean currently is an inmate at the Federal Correctional Institution in Sheridan, Oregon. He has served approximately 36 months of his 60-month sentence and has a scheduled release date of July 11, 2017. After Dean filed his § 2255 motion, the case was reassigned to this Court.

## DISCUSSION

Dean argues that the same vagueness problem that caused the ACCA's residual clause to be unconstitutional in *Johnson* also renders the identically worded residual clause in the Career Offenders Guideline, § 4B1.2(a)(2), unconstitutional. Thus, Dean argues, his sentence violates due process of law because his base offense level was increased by the "crime of violence" enhancement in § 2K2.1(a)(4)(A) from 14 to 20 based upon § 4B1.2(a)(2), an unconstitutionally vague Guideline provision. Dean asserts that the Court must resentence him without applying the "crime of violence" enhancement to remedy the constitutional violation.

The Government concedes that after *Johnson*, due process vagueness principles apply to the Guidelines and that *Johnson* renders § 4B1.2(a)(2) unconstitutionally vague.[5] Govt's Response (Dkt. 62) at 5 (agreeing "that the guidelines' residual clause is unconstitutionally vague, and that due process vagueness principles apply to the [advisory] sentencing guidelines"). The Government agrees with Dean that if he were sentenced today, the "crime of violence" enhancement under § 2K2.1(a)(4)(A) would not apply and that his base offense level would be

---

[5] The Court notes that the Government makes this assertion despite the lack of Ninth Circuit or Supreme Court authority considering the issue. In fact, "[n]o circuit has held in a published opinion that advisory guidelines can be unconstitutionally vague." *United States v. Matchett*, 802 F.3d 1185, 1196 (11th Cir. 2015) (rejecting the argument that § 4B1.2(a)(2)'s residual clause is unconstitutionally vague after *Johnson*). The Government makes a number of concessions and stipulations in this case. Where the Government has done so, the Court accepts the Government's position and does not conduct an independent analysis.

calculated at 14 rather than 20. Thus, the Government does not dispute the merits of Dean's

claim. The Government also does not argue that Dean waived his right to bring this motion.[6]

The Government, however, argues that Dean's motion should be denied for two

independently sufficient reasons. First, the Government argues that Dean's claim is barred under

the doctrine of procedural default because Dean did not raise his argument earlier on direct

appeal. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006) ("The general rule in

federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from

raising the claim on collateral review."). Second, the Government argues that under *Teague v.*

*Lane*, 489 U.S. 288 (1989) (plurality opinion), *Johnson* does not apply retroactively in Dean's

case. *Teague* "generally precludes the application of 'new constitutional rules of criminal

procedure' to cases that 'have become final before the new rules are announced.'" *United States*

*v. Swisher*, 811 F.3d 299, 306 (9th Cir.) (en banc) (quoting *Bousley v. United States*, 523 U.S.

---

[6] The plea agreement specifies that Dean waives his right to file a § 2255 motion except under three circumstances, none of which apply in this case. Dean does not argue that he received ineffective assistance of counsel; he did not move for a new trial or judgment under Federal Rule of Criminal Procedure 33 based on newly discovered evidence within three years of the entry of his guilty plea; and he does not move to reduce his sentence under 18 U.S.C. § 3582(c)(2) based on changes to the sentencing guidelines made by the Sentencing Commission. *See supra* n.1, 2.

In the Government's response brief, the Government stipulates that although Dean expressly waived his right to file a § 2255 motion collaterally attacking his sentence, his waiver does not bar this motion because of the constitutional basis for Dean's challenge. Govt's Response (Dkt. 62) at 5 (stating that although "Dean filed a 2255 despite his express waiver of his right to do so," the motion is "permissible given the constitutional basis for his challenge."). In the Ninth Circuit, an appeal waiver made knowingly and voluntarily and otherwise in compliance with Federal Rule of Criminal Procedure 11 will bar collateral attacks on a sentence in all but three circumstances: (1) the sentencing judge informs a defendant that he or she retains the right to appeal; (2) the defendant's "sentence does not comport with the terms of the plea agreement;" or (3) "the sentence violates the law." *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007). "A sentence is illegal if it exceeds the permissible statutory penalty for the crime *or violates the Constitution*." *Id.* (emphasis added). Given the Government's stipulation, the Court need not consider whether Dean's motion is properly before the Court despite his waiver. *See supra* n.5.

614, 619-20 (1998)) (applying *Teague* to a § 2255 motion). The Court addresses each argument in turn. *See* Brian R. Means, *Federal Habeas Manual* § 9B:5 (2015) (stating that generally, a court should decide the procedural default issue before reaching a *Teague* question).

## A.  Procedural Default

A petitioner who challenges his sentence under § 2255 without first raising his claim on direct appeal procedurally defaults the claim. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003). A petitioner may overcome procedural default and raise the claim in a habeas petition "'only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent.'" *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (quoting *Bousley*, 523 U.S. at 622).

Dean's claim is procedurally defaulted because he did not file a direct appeal of his sentence. Dean does not argue that he is actually innocent. Thus, to overcome procedural default, Dean must establish both cause for the failure to raise his claim on direct review and actual prejudice resulting from the error in calculating his advisory sentencing range.[7]

### 1.  Cause

The Government does not challenge that Dean has shown cause. A petitioner satisfies the cause prong by demonstrating "that the procedural default is due to an 'objective factor' that is 'external' to the petitioner and that 'cannot be fairly attributed to him.'" *Manning v. Foster*,

---

[7] Dean appears to argue that the procedural default doctrine may not apply to his case, citing the Ninth Circuit's statement in *English v. United States*, 42 F.3d 473 (9th Cir. 1994), that "the cause and prejudice standard is limited to cases in which the petitioner has *defaulted* a claim by failing to comply with some procedural rule. . . . If the petitioner's failure to raise a claim did not violate any then-existing rule, he did not commit a procedural default." *Id.* at 478 (emphasis in original). As Dean himself notes, however, the Ninth Circuit has subsequently clarified that its holding in *English* was limited to the state of the law in 1989, and that currently, "most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence." *Braswell*, 501 F.3d at 1150 n.1.

224 F.3d 1129, 1133 (9th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A petitioner makes a sufficient showing of cause where "the factual or legal basis for a claim was not reasonably available to counsel" at the time of direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The Ninth Circuit has stated that the failure to object when such an objection "would have been futile" does not result in procedural default.[8] *English*, 42 F.3d at 479 (quoting *United States v. France*, 886 F.2d 223, 228 (9th Cir. 1989)).

In *English*, each of the petitioners was convicted at a trial in which a magistrate judge presided over voir dire without the petitioner's consent. *Id.* After the petitioners were convicted, the Supreme Court held in *Gomez v. United States*, 490 U.S. 858 (1989), that it is *per se* reversible error for a magistrate judge to preside over jury selection without the defendant's consent. *English*, 42 F.3d at 474. In *English*, the Ninth Circuit found that the petitioners' failure to object at their trials did not prevent the court from reaching the merits of their claims "because 'a solid wall of circuit authority' prior to *Gomez* had held that it was not error for magistrates to conduct voir dire in felony trials." *Id.* at 479 (quoting *France*, 886 F.2d at 228).

Dean argues that he satisfies the cause prong because *Johnson* overruled the Supreme Court's previous decision in *Sykes*. Dean cites to the Supreme Court's decision in *Reed v. Ross*, 468 U.S. 1 (1984), in support of his argument. In *Reed*, the Supreme Court stated that when one of its decisions explicitly overrules one of its prior precedents, and that case is "given retroactive application [by the Court], there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that this Court has ultimately adopted." *Id.* at 17. Although the Court agrees that *Johnson* explicitly overruled *Sykes*,

---

[8] The Court notes that the Supreme Court instructs that "'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

the Court declines to consider the issue of whether the Supreme Court "held [*Johnson*] to have

retroactive application" such that the rule from *Reed* applies.[9] *See id.*

The Government, however, concedes that Dean may be able to establish cause because "a

solid wall of circuit authority" would have rendered his claim futile. *See English*, 42 F.3d at 479

(quotation marks omitted). Although the Ninth Circuit has considered challenges to the

Guidelines on vagueness grounds, it has denied such claims on the merits. *See, e.g.*, *United*

*States v. Rearden*, 349 F.3d 608, 614 (9th Cir. 2003) (applying plain error review and holding

that U.S.S.G. § 2G2.2(b)(3) is not unconstitutionally vague as applied to the petitioner's case);

*United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997) (holding that U.S.S.G.

§ 2F1.1(b)(6)(B) is not unconstitutionally vague).

Dean was sentenced in 2014, before *Johnson* overruled *Sykes* and declared the ACCA's

residual clause void for vagueness, and before the federal government conceded that *Johnson*

invalidates the residual clause in § 4B1.2(a)(2) of the Career Offenders Guideline.[10] The Court

---

[9] Under 28 U.S.C. § 2255(h)(2), a court of appeals must certify a second or successive
motion under § 2255 to contain "a new rule of constitutional law, made retroactive to cases on
collateral review by the Supreme Court, that was previously unavailable." In considering
applications for leave to file second or successive § 2255 motions, circuit courts have disagreed
about whether the *Johnson* Court "made" its new rule retroactive. *Compare Price v. United*
*States*, 795 F.3d 731, 732 (7th Cir. 2015) (holding "that *Johnson* announces a new substantive
rule of constitutional law that the Supreme Court has categorically made retroactive to final
convictions" for purposes of § 2255(h)), *with In re Rivero*, 797 F.3d 986, 988 (11th Cir. 2015)
(holding "that *Johnson* did not establish a new rule of constitutional law made retroactive to
cases on collateral review by the Supreme Court" and denying a petitioner's application for leave
to file a second or successive § 2255 motion).

[10] As Dean points out, the federal government stipulated that *Johnson* applies to
§ 4B1.2(a)(2)'s residual clause in at least one other case within the Ninth Circuit before Dean
filed this § 2255 motion. *See* Supplemental Brief for the United States at 7, *United States v.*
*Talmore*, No. 13-10650 (9th Cir. Aug. 17, 2015), ECF No. 42 (citations omitted) ("The
Government concedes that *Johnson* applies to the identically worded residual clause of 4B1.2(a).
This Court has held that ACCA's residual clause and the Guidelines' residual clause must be
interpreted in the same way and have applied decisions interpreting the two provisions

thus finds that the legal basis for Dean's claim was not reasonably available to him before *Johnson* and the federal government's stipulation that *Johnson*, and thus due process vagueness principles, apply to the Guidelines. *See also Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (holding that the petitioner made a sufficient showing of cause where New York law concerning depraved indifference murder "changed drastically" after the petitioner's trial). Accordingly, Dean has established cause for his failure to raise his claim on direct review.

### 2. Prejudice

The Government, however, argues that Dean cannot show actual prejudice resulting from the error in calculating his advisory sentencing range. A petitioner satisfies the prejudice prong by demonstrating that the alleged error "'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Braswell*, 501 F.3d at 1150 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Demonstrating that the alleged error "'created a *possibility* of prejudice'" is not sufficient. *Id.* (emphasis in original) (quoting *Frady*, 456 U.S. at 170).

In *United States v. Frady*, the jury convicted the petitioner of first-degree murder and robbery, and sentenced him to death. 456 U.S. at 156. In his § 2255 motion, the petitioner argued that the trial court erred in instructing the jury on the meaning of malice, thus eliminating any possibility of a manslaughter verdict. *Id.* at 158. The Supreme Court held that the petitioner failed to meet his burden of showing that "the errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions," and that he could not, therefore, demonstrate actual prejudice sufficient to excuse his procedural default. *Id.* at 170 (emphasis in original). The Court explained that there was "no substantial

---

interchangeably. . . . *Johnson* has invalidated the ACCA residual clause as unconstitutionally vague. . . . The advisory Guidelines also appear to be subject to vagueness challenges.").

likelihood that the same jury that found Frady guilty of first-degree murder would have concluded, if only the malice instructions had been better framed, that his crime was only manslaughter." *Id.* at 172.

What a petitioner must show in order to establish actual prejudice outside of the context of alleged jury instruction errors is often unclear. "The Supreme Court has "refrained from giving 'precise content' to the term 'prejudice.'" *Id.* at 168 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 91 (1977)); *see also* 2-26 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.3c (2015) (emphasis in original) ("The Supreme Court has not yet provided a precise definition of the 'prejudice' half of the 'cause and prejudice' exception to the procedural default doctrine. . . . [T]he Court's decisions do not identify the standard by which the courts should determine whether the alleged error caused *enough* or the *right kind* of prejudice."); Means, *Federal Habeas Manual* § 9B:72 ("The Supreme Court has not attempted to establish conclusively the contours of the prejudice standard.").

The Supreme Court has, however, stated that the showing of prejudice required to overcome procedural default is "significantly greater than that necessary under 'the more vague inquiry suggested by the words plain error.'" *Murray*, 477 U.S. at 493-94 (quoting *Engle*, 456 U.S. at 135). The plain error standard of review applies on direct appeal when a defendant fails to raise an objection in the district court. *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005). "Under the plain error standard, relief is warranted where the district court committed (1) error that (2) is plain; (3) 'affected substantial rights;' and (4) 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Vargem*, 747 F.3d 724, 728 (9th Cir. 2014) (quoting *United States v. Teague*, 722 F.3d 1187, 1190 (9th Cir. 2013)). "A defendant bears the burden to show her substantial rights were affected and,

to do so, 'must establish that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.'" *United States v. Bonilla-Guizar*, 729 F.3d 1179, 1187 (9th Cir. 2013) (quoting *Ameline*, 409 F.3d at 1078); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (stating that in most cases, affecting substantial rights "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings.").

The Ninth Circuit has repeatedly held, on direct review, that misapplication of advisory Guidelines constitutes plain error that affects a defendant's substantial rights. *See, e.g.*, *Vargem*, 747 F.3d at 729 (quoting *Bonilla-Guizar*, 729 F.3d at 1188) ("'We have held that when a sentencing judge incorrectly calculates the Guidelines range, potentially resulting in the imposition of a greater sentence, the error affects the defendant's substantial rights and the fairness of the judicial proceedings.'"). The Second Circuit has also held, on direct review, that an error in applying an enhancement under the advisory Guidelines was plain. *See United States v. Reyes*, 691 F.3d 453, 460 (2d Cir. 2012) ("The district court's error in sentencing Reyes as a career offender on this record affected his substantial rights because it resulted in an elevated offense level under the Guidelines. We must vacate the sentence imposed by the district court and remand for proceedings consistent with this opinion."). Thus, in order to demonstrate actual prejudice sufficient to excuse procedural default, Dean must make a showing greater than that required by plain error review; he must *at least* show that the error affected the outcome of his sentencing proceedings.[11]

---

[11] The Court notes that, although not cited by either party, the Ninth Circuit has held that a petitioner did not establish actual prejudice sufficient to overcome procedural default where he could not "make the requisite showing that his sentence would have been different" absent the alleged error. *Correll v. Stewart*, 137 F.3d 1404, 1416 (9th Cir. 1998); *see also United States v. De la Fuente*, 8 F.3d 1333, 1337 (1993) (holding that the standard for prejudice under *Frady* was

One district court that considered procedural default in the context of a claim identical to Dean's held that the petitioner made a showing of actual prejudice sufficient to overcome procedural default. In *Cummings v. United States*, 2016 WL 799267 (E.D. Wisc. Feb. 29, 2016), the § 2255 petitioner argued that his sentence was no longer appropriate after *Johnson* because his advisory sentencing range was calculated using the residual clause of the Career Offenders Guideline. *Id.* at *1. The petitioner's career offender designation set his base offense level at 34, with a resulting sentencing range of 188 to 235 months. Without the career offender designation, the petitioner's base offense level would have been 12, with a resulting sentencing range of 24 to 30 months. The petitioner was sentenced to 180 months imprisonment. The district court held that the § 2255 petitioner "can clearly establish prejudice in this case. . . . if the Court had applied the correct guideline range (without the career offender enhancement), then it would have sentenced [petitioner] to a lower sentence, establishing prejudice."[12] *Id.* at *7.

---

met where the outcome of a petitioner's sentence would have been different had a claim of government breach of plea agreement been raised at sentencing). In *Correll v. Stewart*, the petitioner argued that his death sentence violated due process because of an *ex parte* conversation between the sentencing judge and a court-appointed psychiatric expert. 137 F.3d at 1415. The petitioner argued that the conversation "could have contributed to the judge's ultimate conclusion that [his] psychiatric status did not yield any mitigating factors," citing *Gardner v. Florida*, 430 U.S. 349 (1977), where the Supreme Court found that the petitioner was denied due process of law because his death sentence was based upon information not fully disclosed to defense counsel. *Correll*, 137 F.3d at 1415. The Ninth Circuit found that there was no basis upon which the *ex parte* conversation could have influenced the sentencing judge's decision because the petitioner's attorney did not present any evidence of his psychiatric state as a mitigating factor at sentencing. *Id.* Thus, the petitioner was not prejudiced by the alleged error. *Id. Correll* arguably is distinguishable from this case because here, the Government has conceded that an unconstitutionally vague Guidelines provision nearly doubled Dean's advisory sentencing range.

[12] In so holding, the court noted that the Seventh Circuit has "questioned whether prejudice can actually be shown" when the petitioner is sentenced under the advisory Guidelines regime. *Cummings*, 2016 WL 799267, at *7 n.10. The court ultimately held that *Johnson* was not retroactive in the Guidelines context based upon Seventh Circuit precedent, but "presume[d] prejudice for [the procedural default] portion of its analysis." *Id.*

The Government argues that Dean cannot establish actual prejudice because he cannot show that he would have received a lower sentence but for the error in calculating his advisory sentencing range. The Government asserts that if Dean were resentenced, it would urge the Court to impose the same 60-month sentence today. The Government argues that the 60-month sentence would be justified by following the U.S. Probation Office's recommendation that Dean's sentence run consecutively, rather than concurrently, with the 24-month sentence he received in Case No. 3:08-cr-00252-HA for the supervised release violations.[13] The Government states that given Dean's criminal history and his repeated supervised release violations, a 60-month sentence remains proper even without the operation of the § 2K2.1(a)(4)(A) enhancement for a prior felony crime of violence.

The Government asserts that *Lockhart v. Fretwell*, 506 U.S. 364 (1993), is instructive in determining whether Dean can establish actual prejudice. In *Lockhart*, the Supreme Court considered whether trial counsel's failure to make an objection in a state criminal sentencing proceeding that might have resulted in a lower sentence constituted "prejudice" within the

---

[13] Although the Government concedes that it was permissible for Dean to file this § 2255 motion despite his express waiver of his right to do so, *see supra* n.6, the Government asserts that it is relieved of its obligations under the plea agreement, including its obligation to recommend concurrent sentences, because Dean filed this motion despite his waiver and thus is in breach of his plea agreement. Dean disputes that the filing of his motion constitutes a breach such that the Government is relieved of its obligations to comply with the terms of the plea agreement. A plea agreement, however, is a contract and subject to contract law standards. *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001). Presumably, were the Court to grant Dean's motion, Dean would no longer agree to recommend that he serve a sentence of 60 months in this case. One principle of contract law is that "[w]here performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance." *Restatement (Second) of Contracts* § 253(2). Thus, if Dean no longer is required to recommend a 60-month sentence, the Government cannot be bound by the terms of the plea agreement.

meaning of *Strickland v. Washington*, 466 U.S. 668 (1984).[14] *Lockhart*, 506 U.S. at 366. The

*Lockhart* Court held that the "result of the sentencing proceeding in the present case was neither

unfair nor unreliable," although the respondent may have received a lower sentence but for his

trial counsel's error. *Id.* at 371. The Court reasoned that the case upon which the trial counsel's

objection would have relied was subsequently overruled and no longer good law. *Id.* Thus,

"counsel's error would have deprived respondent of the chance to have the state court make an

error in his favor." *Id.* (quotation marks omitted). The Court held that "[t]o set aside a conviction

or sentence solely because the outcome would have been different but for counsel's error may

grant the defendant a windfall to which the law does not entitle him." *Id.* at 369-70.

The Government asserts that under *Lockhart*, Dean cannot show that his original

sentencing hearing was fundamentally unfair or unreliable because his 60-month sentence could

have been lawfully achieved in different ways, such as through imposition of a sentence

consecutive to his supervised release sanction or through upward variance or departure. Thus, the

Government argues that an advisory Guidelines calculation error cannot render an otherwise

lawful sentence fundamentally unfair.[15]

The Government's reliance upon *Lockhart*, however, is misplaced. *Lockhart* concerned

the showing of prejudice required to prevail on an ineffective assistance of counsel claim, not the

---

[14] In *Strickland*, the Supreme Court formulated the standard for determining whether trial counsel has rendered constitutionally ineffective assistance warranting reversal of a conviction or death sentence. 466 U.S. at 687. Under the *Strickland* standard, a defendant must show two things: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Id. Lockhart* clarified that "an analysis [of prejudice] focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." 506 U.S. at 369.

[15] The Court notes that the Government's position that Dean's sentence is lawful may be in tension with the Government's concession that the basis of Dean's claim is constitutional error. *See supra* n.6.

showing of prejudice required to excuse a procedurally defaulted claim. Thus, *Lockhart*'s discussion regarding the fundamental fairness of a proceeding and the Court's caution against granting "criminal defendants a windfall to which they are not entitled" arises in a different context and definition of prejudice than what is applicable to the case at hand. *See id.* at 366. The Government does not cite any law to support the proposition that the *Lockhart/Strickland* prejudice standard may be considered in the procedural default context when the § 2255 petitioner makes no *Strickland* claim of ineffective assistance of counsel.

The Government also argues that this case is analogous to *Nagi v. United States*, 90 F.3d 130 (6th Cir. 1996), in which the Sixth Circuit held that a petitioner failed to demonstrate actual prejudice under *Frady* where his sentence was calculated using the wrong version of the Guidelines. *Id.* at 136. In *Nagi*, the petitioner's base offense level was calculated at 34, and his resulting Guidelines range was 188 to 235 months. *Id.* at 133. The petitioner and the government agreed on a plea bargain that called for a sentence between 14 and 20 years, and in exchange for the petitioner's guilty plea, the government agreed to drop some of the charges against him. *Id.* The court sentenced him to 204 months, or 17 years, in prison, which was 69 months higher than the maximum sentence allowable under the correct version of the Guidelines. *Id.* The Sixth Circuit held that "the use of the [incorrect] Guidelines did not work to Nagi's 'actual and substantial disadvantage'" because the government maintained that it would not have entered into the plea agreement had the petitioner insisted upon a lower sentencing range. *Id.* at 136 (quoting *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993)).

This case is not like *Nagi*. Here, Dean and the Government agree that there was a constitutional error in the calculation of Dean's advisory sentencing range. *Nagi*, in contrast, did

not involve a constitutional violation—alleged or otherwise—in the Guidelines calculation.[16]

Dean's advisory sentencing range was 63 to 78 months without the benefit of the two-level

downward variance for waiving indictment and motions practice. Dean's sentencing range would

have been nearly half that, from 33 to 41 months, if the Guidelines' unconstitutionally vague

residual clause had not been used to increase his base offense level.

During oral argument and in post-oral argument supplementary briefing, the Government

also argues that Dean cannot demonstrate actual prejudice because Dean's claim may not be

cognizable[17] on a § 2255 motion. Govt's Reply to Def's Supplemental Brief (Dkt. 69) at 2

("Dean's sentencing challenge does not raise constitutional concerns because it is premised upon

a procedural guideline error. Dean stands in precisely the same position as any other defendant

whose advisory guideline range was reached as the result of a computation error; the general rule

that such claims are not cognizable on collateral review should apply here too."). Not every

claim of error is cognizable on a motion under § 2255. *Lord v. Lambert*, 347 F.3d 1091, 1094

(9th Cir. 2003) (citing *Davis v. United States*, 417 U.S. 333, 346 (1974)). The Ninth Circuit

instructs as follows:

> Where the error is neither jurisdictional nor constitutional, the
> appropriate inquiry is whether the error is "a fundamental defect
> which inherently results in a complete miscarriage of justice," or
> "an omission inconsistent with the rudimentary demands of fair
> procedure," and whether the error "present[s] exceptional
> circumstances where the need for the remedy afforded by the writ
> of habeas corpus is apparent."

---

[16] The Court notes that *Nagi* preceded *Peugh v. United States*, 133 S. Ct. 2072 (2013), in which the Supreme Court held that sentencing a defendant under Guidelines promulgated after his offense violates the *Ex Post Facto* Clause when the new version provides for a higher sentencing range than the version in place at the time of the offense. *Id.* at 2078.

[17] Cognizable is defined as follows: "Capable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction." *Black's Law Dictionary* (10th ed. 2014).

*Id.* (alterations in original) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also*

*United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015). If a claim of error does not fall within

one of these categories, the claim will not be cognizable on a § 2255 motion. *See Foote*, 784 F.3d

at 936; *Lord*, 347 F.3d at 1094.

The Ninth Circuit has held that nonconstitutional sentencing errors are not cognizable on

collateral review. *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994) (concluding

"that this court follows the rule that nonconstitutional sentencing errors that have not been raised

on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C.

§ 2255."). Here, however, the Government agrees that Dean's advisory sentencing range was

increased by an unconstitutionally vague sentencing provision. Thus, *Schlesinger* does not apply.

The Government also cites to the Fourth Circuit's recent decision *United States v. Foote*.

In *Foote*, the Fourth Circuit held that a nonconstitutional error in calculating the petitioner's

advisory guidelines sentence was not cognizable on a § 2255 motion because the error "was not a

fundamental defect that inherently result[ed] in a complete miscarriage of justice." 784 F.3d

at 940. In reaching this conclusion, the Fourth Circuit surveyed federal appellate court case law

and observed that "there is no decision left standing in any circuit whereby a challenge to one's

change in career offender status, originally determined correctly under the advisory Guidelines,

is cognizable on collateral review." *Id.* at 939.

*Foote*, however, was pre-*Johnson* and thus did not include any appellate cases that

considered whether a claim regarding the application of the residual clause in the Career

Offenders Guideline was cognizable on collateral review. Additionally, each of the cases that

*Foote* considered applied the "complete miscarriage of justice" standard that is not applicable to

claims of constitutional error.[18] *See Lord*, 347 F.3d at 1094. Here, the Government agrees that the basis of Dean's claim is constitutional. *See supra* n.6. Thus, the Court finds that the general rule that errors in advisory Guidelines calculations are not cognizable does not apply here and is thus not a basis for finding a lack of actual prejudice.

Although *United States v. Booker*, 543 U.S. 220 (2005), established that the Guidelines are advisory, after *Booker* the Supreme Court has repeatedly stated that "'district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" *Peugh*, 133 S. Ct. at 2083 (emphasis in original) (quoting *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)). "At any sentencing, 'the Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process.'" *Vargem*, 747 F.3d at 728 (quoting *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)); *see also Peugh*, 133 S. Ct. at 2083 (stating that despite the advisory nature of the Guidelines, they remain "the framework for sentencing" and "the starting point for every sentencing calculation in the federal system"). "Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*.'" *Peugh*, 133 S. Ct. at 2083 (emphasis in original) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion)).

As the Supreme Court recently stated, "when a Guidelines range moves up or down, offenders' sentences move with it." *Id.* at 2084. The Government concedes that there was a

---

[18] *See Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (applying the "miscarriage of justice" standard to a § 2255 motion claiming error under *Begay v. United States*, 553 U.S. 137 (2008)); *Hawkins v. United States*, 706 F.3d 820, 825 (7th Cir. 2013) (applying the "miscarriage of justice" standard to a § 2255 motion claiming error under *Chambers v. United States*, 555 U.S. 122 (2009)), *opinion supplemented on denial of rehearing by* 724 F.3d 915 (7th Cir. 2013) ("*Hawkins I*"); *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (applying the "miscarriage of justice" standard to a § 2255 motion claiming error under *Begay*).

constitutional error in the Guidelines calculation that nearly doubled Dean's advisory sentencing range. A district court's failure accurately to calculate the correct Guidelines range is an error that "'derail[s] the sentencing proceeding before it even beg[ins].'" *Vargem*, 747 F.3d at 728 (quoting *United States v. Doe*, 705 F.3d 1134, 1154 (9th Cir. 2013)). The Court finds that because Dean's advisory sentencing range was calculated using what the Government stipulates was an unconstitutionally vague provision, Dean suffered an error that "'worked to his *actual* and substantial disadvantage, infecting his entire [sentencing proceedings] with error of constitutional dimensions.'" *See Braswell*, 501 F.3d at 1150 (quoting *Frady*, 456 U.S. at 170) (emphasis in original). Thus, Dean has made the requisite showing of actual prejudice sufficient to overcome procedural default.

## B.  Retroactivity

The Government also argues that even if Dean can overcome procedural default, *Johnson* does not apply retroactively to his case under the *Teague* doctrine. When a Supreme Court decision results in a new constitutional rule, the rule applies to all criminal cases still pending on direct review. *Teague*, 489 U.S. at 304. New constitutional rules do not apply retroactively on collateral review, however, unless they fall within one of two exceptions outlined in *Teague*. *Id.* at 310. Under the first exception, a new rule will apply retroactively "if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.* at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971)). The Supreme Court has described these rules as "substantive." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). Substantive rules alter "the range of conduct or the class of persons that the law punishes." *Id.* at 353. Substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351-52

(citations omitted). These "rules apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id.* at 352 (quoting *Bousley*, 523 U.S. at 620).

Under the second *Teague* exception, a new rule will be applied retroactively if it is a "watershed" rule of criminal procedure. *Teague*, 489 U.S. at 311. Procedural rules, as opposed to substantive rules, "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Schriro*, 542 U.S. at 352. Procedural rules "regulate only the *manner of determining* the defendant's culpability." *Id.* at 353 (emphasis in original). Thus, rules that require "a jury rather than a judge find the essential facts bearing on punishment" are "prototypical procedural rules." *Id.* (finding that *Ring v. Arizona*, 536 U.S. 584 (2002), which held that the Sixth Amendment requires that a jury, and not a sentencing judge, must find aggravating circumstances necessary to impose the death penalty, is a procedural rule). The Supreme Court has held that *Crawford v. Washington*, 541 U.S. 36 (2004), under which "'[t]estimonial statements of witnesses absent from trial' are admissible only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness],'" is a procedural rule. *Whorton v. Bockting*, 549 U.S. 406, 413, 417 (2007) (alterations in original) (quoting *Crawford*, 541 U.S. at 59).

Only "'watershed'" procedural rules that implicate "'the fundamental fairness and accuracy of the criminal proceeding'" and "'without which the likelihood of an accurate conviction is *seriously* diminished'" will have retroactive effect. *Schriro*, 542 U.S. at 352 (emphasis in original) (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990); *Teague*, 489 U.S. at 313)). The Supreme Court has "usually cited *Gideon v. Wainwright*, 372 U.S. 335 (1963),

holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception." *Saffle*, 494 U.S. at 495. The Supreme Court has been reluctant classify procedural rules as "watershed." *Schriro*, 542 U.S. at 352 (alterations in original) (quoting *Tyler v. Cain*, 533 U.S. 656, 667 n.7 (2001)) ("This class of rules is extremely narrow, and 'it is unlikely that any . . . ha[s] yet to emerge.'").

Dean argues that *Johnson* is a new, substantive rule that applies retroactively on collateral review. The Government agrees that *Johnson* is a new rule. The Government also agrees that the rule announced in *Johnson* is substantive, and thus applies retroactively, in cases where petitioners' sentences have been enhanced under the ACCA's residual clause. The Government argues, however, that errors in calculating the statutory maximum term under the ACCA are fundamentally different than errors in calculating a sentencing range under the Guidelines because the latter do not alter the permissible statutory maximum or minimum sentences, and thus do not "place particular conduct or persons . . . beyond the State's power to punish."[19] *Id.* The Government thus asserts that although *Johnson*'s new rule is substantive and applies

---

[19] The Government additionally states that "Guidelines sentences must always be within Congressional limits; as a result, a Guidelines sentence imposed on the basis of an incorrectly calculated range may be erroneous, but it is not illegal or unlawful as in a case involving *Johnson* error under the ACCA." Govt's Response (Dkt. 62) at 12. The Government cites *Sun Bear*, where the Eighth Circuit stated that the petitioner's sentence was not unlawful despite a *nonconstitutional* error in calculating his Guidelines range because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority." 644 F.3d at 705; *see also id.* at 704 (stating that a constitutional error is not "at issue here"). Accordingly, Eighth Circuit found that no miscarriage of justice occurred, and thus that the petitioner's claim was not cognizable in a § 2255 motion. *Id.* at 704-05. As the Court discussed in Section A.2. *supra*, however, the Government concedes that the basis for Dean's claim is constitutional. Thus, the miscarriage of justice standard does not apply. *See Lord*, 347 F.3d at 1094. Additionally, in the Ninth Circuit, "[a] sentence is illegal if it exceeds the permissible statutory penalty for the crime *or violates the Constitution*." *Bibler*, 495 F.3d at 624 (emphasis added); *see also supra* n.6. Thus, given the Government's stipulations in this case, an advisory sentencing range calculated using an unconstitutionally vague Guidelines provision may, in fact, be illegal under Ninth Circuit law.

retroactively to a first collateral attack under § 2255 in the ACCA context, *Johnson*'s new rule is procedural and non-watershed, and thus does not apply retroactively, in the Guidelines context.

The Government is, in essence, arguing that Guidelines errors are always procedural, but provides no Ninth Circuit or Supreme Court authority to that effect. The Seventh Circuit, however, has held that "errors in applying the advisory guidelines are procedural" for purposes of the *Teague* doctrine. *Hawkins v. United States*, 724 F.3d 915, 917 (7th Cir. 2013) (supplemental opinion on denial of rehearing) ("*Hawkins II*"). In so holding, Judge Posner explained that "the statement in *Schriro* that a procedural error 'merely raise[s] the possibility that someone convicted with the use of the invalidated procedure might have been acquitted otherwise' is an exact description" of an error in applying the advisory Guidelines. *Id.* (alteration in original) (quoting *Schriro*, 542 U.S. at 351-52). Judge Posner also explained that in *Peugh*, the Supreme Court repeatedly referred to errors in calculating an advisory Guidelines range as procedural. *Id.* ("So since *Peugh* says that 'failing to calculate the correct Guidelines range constitutes procedural error,' 133 S. Ct. at 2083, the implication is that the rule announced in *Peugh* won't be applied retroactively . . . .").[20] More recently, Judge Posner held that *Peugh* does not apply retroactively in a § 2255 motion. *Conrad v. United States*, --- F.3d ---, 2016 WL 851703, at *2-3 (7th Cir. Mar. 4, 2016) (stating that although "most procedural rules have substantive effects" and "the increase in the guidelines range of which the defendant complains both seems substantive and postdated his crime," the petitioner was not entitled to relief).

District courts in the Seventh Circuit have relied upon *Hawkins II* to hold that the new rule announced in *Johnson* is procedural and non-watershed when applied to the Guidelines. *See*

---

[20] The Court notes that in *Peugh*, the Supreme Court did not characterize Guidelines errors as procedural in the context of retroactivity and the *Teague* doctrine; rather, the Court made the characterization in the context of appellate review and the abuse of discretion standard. *Peugh*, 133 S. Ct. at 2080 (citing *Gall*, 552 U.S. at 51).

*United States v. Stork*, 2015 WL 8056023, at \*6 (N.D. Ind. Dec. 4, 2015) (holding that "[b]ecause a new rule invalidating the residual clause of the Guidelines would be neither a substantive rule nor a watershed rule of criminal procedure, it would not apply retroactively to cases on collateral review, and thus offers [petitioner] no relief."), *appeal docketed*, No. 15-3785 (7th Cir. Dec. 15, 2015); *see also Cummings*, 2016 WL 799267, at \*16 ("Quite clearly, the two *Hawkins* opinions. . . absolutely prevent this Court from granting [petitioner's] § 2255 motion."). In *Stork*, the district court rejected the argument that because *Johnson*'s new rule is retroactive in the ACCA context, it must also be retroactive in the Guidelines context. 2015 WL 8056023, at \*6-7 (emphasis in original) ("*Johnson* applies, if at all, by analogy, through which the resulting rule would be that the residual clause *of the Guidelines* is void for vagueness. . . . the retroactivity analysis is quite different in that context.").

Other district courts to consider the issue also have reached the conclusion that although *Johnson* may be substantive and apply retroactively in the ACCA context, *Johnson* represents a non-watershed procedural rule when applied to § 4B1.2(a)(2)'s residual clause. *See, e.g., Frazier v. United States*, 2016 WL 885082, at \*6 (E.D. Tenn. Mar. 8, 2016) (concluding that "while *Johnson* effected a substantive change in the law by altering the range of lawful sentences under the ACCA, extension of that same reasoning to the Guidelines would result in only procedural changes to the sentencing process"); *Hallman v. United States*, 2016 WL 593817, at \*5 (W.D.N.C. Feb. 12, 2016) (quoting *Schriro*, 542 U.S. at 352) (finding that *Johnson*'s effect on § 4B1.2(a)(2)'s residual clause "did not 'narrow the scope of a criminal statute by interpreting its terms' or 'place particular conduct or persons covered by the statute beyond the State's power to punish'"), *appeal docketed* No. 16-6306 (4th Cir. Mar. 2, 2016); *United States v. Willoughby*, --- F. Supp. 3d ---, 2015 WL 7306338, at \*7 (N.D. Ohio Nov. 18, 2015) (quoting *Schriro*, 542 U.S.

at 352) (reasoning that because an advisory Guidelines sentence "must always fit within the limits set by Congress, an erroneous career-offender designation carries no risk that a defendant 'faces a punishment that the law cannot impose upon him'"), *appeal docketed*, No. 16-3080 (6th Cir. Jan. 28, 2016).

No court in the Ninth Circuit, however, has yet considered this issue. The Government argues that the Ninth Circuit's decision *United States v. Cruz*, 423 F.3d 1119 (9th Cir. 2005), is instructive as to whether *Johnson* is retroactive in the Guidelines context. In *Cruz*, the Ninth Circuit held that *Booker* was a non-watershed procedural rule that did not apply retroactively under *Teague*. *Id.* at 1120-21. *Booker* made "available a 'Sixth Amendment objection—that the defendant's sentence was enhanced by judge-found facts under a mandatory Guidelines system.'" *Id.* at 1120 (quoting *Ameline*, 409 F.3d at 1084). The Ninth Circuit reasoned that the Supreme Court had previously characterized "'[r]ules that allocate decisionmaking authority in this fashion [as] prototypical procedural rules,'" and thus found that *Booker* was procedural under *Teague*. *Id.* (quoting *Schriro*, 542 U.S. at 353).

In *Cruz*, however, the Ninth Circuit did not indicate that new rules applicable to the advisory Guidelines are always procedural for purposes of *Teague*. *Cf. Hawkins II*, 724 F.3d at 917. Nor is the reasoning of *Cruz* relevant to a consideration of whether *Johnson* applies retroactively in the Guidelines context. *Johnson* does not allocate decisionmaking authority between a sentencing judge and jury as does *Booker*; rather, *Johnson* holds that a statutory provision is unconstitutional and may not be used to enhance a sentence.

Dean argues that under Ninth Circuit law, retroactivity is a categorical analysis and that the character of *Johnson* as a new rule does not change from procedural to substantive on an as-applied basis. Dean argues that in *Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir.

2011), the Ninth Circuit spoke authoritatively on whether a rule narrowing the classification of ACCA offenders is substantive and applies retroactively in a § 2255 motion challenging a sentencing enhancement imposed under the Guidelines.

Reina-Rodriguez pleaded guilty without a plea agreement to illegal re-entry after deportation. *Id.* at 1185. He had a previous felony conviction under Utah law for the burglary of a dwelling. *Id.* "Burglary of a dwelling" is a felony "crime of violence" under the Immigration Guideline. *Id.* at 1185-86; *see* U.S.S.G. § 2L1.2(b)(1)(A)(ii) and n.1(B). The sentencing court found that Reina-Rodriguez's Utah conviction constituted a felony "crime of violence" under the Immigration Guideline and thus applied a 16-level enhancement. 655 F.3d at 1185-86.

Reina-Rodriguez filed a direct appeal with the Ninth Circuit, claiming that the enhancement did not apply because "dwelling" was defined more broadly under Utah law than under the Immigration Guideline. *Id.* at 1186. A panel of the Ninth Circuit determined that "burglary of a dwelling under Utah law categorically fits the Guidelines' definition of burglary of a dwelling." *Id.* (quotation marks omitted). The Ninth Circuit panel "reasoned that structures adapted for sleeping or lodging, which are 'dwellings' under Utah law, categorically qualify as dwellings under the Guidelines." *Id.*

One year later, the Ninth Circuit issued its opinion in *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc), in which it overruled the panel opinion in *Reina-Rodriguez* to the extent that it "suggest[ed] that state statutes satisfy the categorical inquiry when they define burglary to include non-buildings adapted for overnight accommodation." *Id.* at 851 n.5. After *Grisel*, the Ninth Circuit granted Reina-Rodriguez's request for a certificate of appealability to decide the question whether the district court's application of a sentencing enhancement for a prior crime of violence based upon Reina-Rodriguez's Utah burglary conviction made his

sentence unlawful. *Reina-Rodriguez*, 655 F.3d at 1187. The Ninth Circuit began by considering whether *Teague* precluded the retroactive application of *Grisel*. *Id.* The Ninth Circuit reasoned that the *Teague* bar did not apply for two reasons. *Id.* at 1188. First, *Teague* only applies to new constitutional rules, which *Grisel* is not because "it does not implicate constitutional rights." *Id.*

Second, the Ninth Circuit found that "*Teague* does not bar retroactive application of *Grisel*" because "*Grisel* announced a substantive rule, rather than a procedural one." *Id.* at 1189. The Ninth Circuit reasoned that:

> *Grisel* altered the punishment that can be imposed on federal defendants under the Armed Career Criminal Act. Under *Grisel*, federal courts can no longer categorically enhance a sentence for such defendants if the underlying state statute defines "burglary to include non-buildings adapted for overnight accommodation."

*Id.* (quoting *Grisel*, 488 F.3d at 851 n.5). The Ninth Circuit rejected the Government's argument that *Grisel* only "'altered the permissible methods for determining' whether a sentencing enhancement can be imposed on account of a state burglary conviction," explaining that *Grisel* "altered the conduct that substantively qualifies as a burglary under the categorical approach." *Id.* Thus, the Ninth Circuit concluded that *Grisel* applied retroactively to Reina-Rodriguez's § 2255 motion. *Id.* at 1193.

In *Reina-Rodriguez*, the Ninth Circuit did not engage in the as-applied analysis that the Government now urges this Court to use. The Ninth Circuit did not distinguish between *Grisel* in the ACCA context and *Grisel* in the Guidelines context. Under the Ninth Circuit's decision, a rule that is substantive in the first context is substantive in the second context. Here, the Government stipulates that *Johnson* is a new substantive rule as applied to the ACCA. The Court declines to depart from the Ninth Circuit's reasoning in *Reina-Rodriguez* and hold that the retroactive nature of *Johnson*'s new rule changes when it is applied to the Guidelines.

The Government also argues that *Johnson* may be distinguished from *Grisel* because *Johnson* "does not alter the conduct that substantively qualifies as a crime of violence . . . it simply alters the means by which a court may determine if a prior conviction constitutes an enhancing predicate offense."[21] Govt's Response (Dkt. 62) at 17. The Court disagrees. Under *Johnson*, Dean's prior state court conviction for fleeing law enforcement no longer constitutes a "crime of violence" for purposes of the Guidelines' residual clause. *Johnson* substantively changes the conduct by which federal courts may enhance the sentence of a defendant under the Guidelines. Thus, *Johnson* does not "regulate only the *manner of determining* the defendant's culpability" like a procedural rule would. *Schriro*, 542 U.S. at 353 (emphasis in original). Despite the fact that they are only advisory, the Guidelines remain "the lodestone of sentencing." *Peugh*, 133 S. Ct. at 2084. Dean was sentenced using what the Government concedes was an unconstitutional enhancement.

Following the Ninth Circuit's decision in *Reina-Rodriguez*, the Court finds that *Johnson* is a new, substantive rule and thus the *Teague* bar does not apply. Accordingly, *Johnson* applies retroactively. The Government does not dispute the merits of Dean's claim that an unconstitutionally vague Guidelines provision was used to enhance his advisory sentencing range. Because Dean's sentence was imposed in violation of the Constitution, Dean is entitled to habeas relief under 28 U.S.C. § 2255(a).

---

[21] Additionally, the Government argues that the Court need not follow the reasoning of *Reina-Rodriguez* because the Ninth Circuit's conclusion that *Grisel* was a substantive rule was not essential to its conclusion that the *Teague* bar did not apply as *Grisel* was not a constitutional rule. The Ninth Circuit, however, stated that "[t]here are several reasons why *Teague* does not apply to *Grisel*," and ultimately held that *Grisel* applies retroactively because it "was a non-constitutional decision of substantive law." 655 F.3d at 1188, 1193. Thus, the *Reina-Rodriguez* court did not explicitly limit its holding regarding retroactivity to the nonconstitutional nature of *Grisel*. Given the lack of other relevant Ninth Circuit or Supreme Court law on this issue, the Court follows the Ninth Circuit's approach in *Reina-Rodriguez* to determine whether a rule is substantive or procedural in the Guidelines context.

**CONCLUSION**

The Court GRANTS Dean's Motion to Vacate or Correct Sentence under 28 U.S.C.

§ 2255. Dkt. 53. The Court vacates and sets aside the Judgment. Dkt. 51. The Court will

resentence Dean, permit him to submit objections to his Presentence Report pursuant to Federal

Rule of Criminal Procedure 32(i)(1)(D), and allow both sides to argue for an appropriate and

lawful sentence.

**IT IS SO ORDERED**.

DATED this 15th day of March, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge